UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHANE POOLE,

       Plaintiff,

v.                                   Case No.:   2:18-cv-810-FtM-99MRM

TIRE RECYCLING SERVICES OF
FLORIDA, INC., a Florida Profit
Corporation, and CHRISTOPHER
JOHNSON, Individually,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

The parties filed a Joint Motion for Approval of Settlement and Dismissal with Prejudice on February 5, 2020.  (Doc. 57).  Plaintiff, Shane Poole, and Defendant, Christopher Johnson, jointly request that the Court approve the terms of their proposed Fair Labor Standards Act ("FLSA") Settlement Agreement (Doc. 57-1) and dismiss this case with prejudice.  (Doc. 57 at 1).  The proposed Settlement Agreement is attached to the parties' motion.  (*See* Doc. 57-1).  After a careful review of the parties' submissions and the record, subject to the discussion below as to the mutual general release, the Undersigned respectfully recommends that the presiding United States District Judge **GRANT** the parties' motion (Doc. 57) and **APPROVE** the proposed Settlement Agreement (Doc. 57-1).

## PROCEDURAL HISTORY

On December 10, 2018, Plaintiff filed a Complaint against both Defendant Christopher Johnson ("Johnson") and Defendant Tire Recycling Services of Florida Inc. ("TRS"), alleging violations under the FLSA.  (Doc. 1 at 1).  On January 29, 2018, Plaintiff filed a Motion for clerk's default against TRS.  (Doc. 11).  On February 6, 2019, Plaintiff filed a Motion for

clerk's default against Defendant Johnson.  (Doc. 14).  On February 19, 2019, this Court entered an Order granting Plaintiff's Motion for clerk's default as to Defendant TRS.  (Doc. 13).  On February 25, 2019, the Court entered an Order granting Plaintiff's Motion for clerk's default against Defendant Johnson.  (Doc. 15).

On March 5, 2019, Plaintiff filed a motion for default judgment against all Defendants. (Doc. 17).  On March 13, 2019, Defendant Johnson, appearing *pro se*, filed a Motion to set aside clerk's entry of default, alleging he was not properly served and requesting an extension of time in order to hire an attorney.  (Doc. 18 at 1).  On March 29, 2019, the Court granted Defendant Johnson's Motion to set aside clerk's entry of default as to Defendant Johnson and ordered him to file his responsive pleading within 21 days of the order.  (Doc. 21 at 5).

On April 1, 2019, United States District Judge Sheri Polster Chappell denied Plaintiff's Motion for default judgment against all defendants without prejudice to Plaintiff's ability to refile against Defendant TRS, in light of the March 29, 2019 order setting aside clerk's default against Defendant Johnson.  (Doc. 22 at 1).  On April 16, 2019, Defendant Johnson filed a Motion requesting permission to represent himself and TRS due to his inability to afford retaining an attorney in this matter.  (Doc. 24).  On April 19, 2019 the Court entered an order granting Defendant Johnson's request to represent himself but denying his request to represent Defendant TRS.  (Doc. 27 at 2).  The Court explained:

> Because Defendant Johnson may not represent Defendant Tire Recycling Services of Florida, Inc., Defendant Johnson's Motion to set aside the clerk's default entered against Defendant Tire Recycling Services (Doc. 25) is due to be stricken.  Once Defendant Tire Recycling Services of Florida, Inc., has obtained counsel, counsel may refile any appropriate motion on its behalf.

(*Id*. at 2).  Therefore, the Court ordered Defendant TRS to retain counsel to represent it no later than May 10 2019, and warned Defendant TRS that failure to comply with the Order may result in the Court recommend a default judgment be entered against it.  (Doc. 27).

On May 21, 2019, the Court entered an Order to Show Cause as to Defendant TRS because TRS had not retained counsel, as required.  (Doc. 28).  The Court ordered that no later than June 10, 2019, Defendant TRS was to retain counsel to represent it and further to show cause: (1) why it failed to comply with the Court's April 19 Order; and (2) why default judgment should not be entered against it.  (*Id*. at 2).  On May 28, 2019 Defendant Johnson filed a letter notice to the Court stating that he had never received the Court's April 19, 2019 Order.  (Doc. 29).  On June 2, 2019, the Court entered an Order striking Defendant Johnson's letter for two reasons.  (Doc. 30 at 1).  First, M.D. Fla. R. 3.01(f) prohibits a party from addressing or presenting any request for relief in the form of a letter or the like and therefore Defendant Johnson's letter response violated this rule.  (*Id*.).  Second, because "this Court previously admonished Mr. Johnson that he – as a lay person – is not permitted to represent any other person or entity in this litigation."  (*Id*.).  Therefore, the Court ordered the letter response (Doc. 29) be stricken and Defendant TRS was ordered to comply with the Court's Show Cause Order (Doc. 28) dated May 21, 2019.  (Doc. 30 at 2).

On August 8, 2019, the Court entered a Report and Recommendation recommending Plaintiff's Motion for default judgment against Defendant TRS be denied without prejudice as it presented a risk of inconsistent judgments.  (Doc. 38 at 1).  On August 27, 2019, Judge Chappell accepted and adopted the Report and Recommendation and denied Plaintiff's Motion for default judgment without prejudice to Plaintiff's ability to renew the motion, if appropriate, at the conclusion of the proceedings against Defendant Johnson.  (Doc. 40 at 2).  On February 5, 2020,

the parties filed the instant Motion.  (Doc. 57).  While Defendant TRS still has not complied with this Court's previous orders to retain counsel, Plaintiff's attorney filed the Joint Motion for Approval of Settlement and Dismissal with Prejudice and, therefore, the Undersigned takes no further issue with evaluating the settlement to ensure the settlement is a fair and reasonable resolution of a bona fide dispute under the FLSA.

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216.  There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53.  The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353.  The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353.  When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id*. at 1353-54.

The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354.  Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA

> coverage or computation of back wages, that are actually in dispute;
> we allow the district court to approve the settlement in order to
> promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

Applying these standards, the Undersigned analyzes the claims, defenses, and proposed settlement in this case below.

## CLAIMS AND DEFENSES

Plaintiff alleges in his Complaint that Defendants employed him in the capacity of a general laborer.  (Doc. 1 at 4).  Plaintiff alleges that "[i]n most if not all workweeks, Plaintiff worked for Defendants in excess of forty (40) hours."  (*Id.*).  Plaintiff maintains Defendants failed to compensate his at a rate of one and on-half times Plaintiff's regular rate of pay for the hours he worked in excess for forty hours in a workweek.  (*Id.* at 4-5).  Plaintiff states, "[I]nstead, Defendants only compensated Plaintiff $50.00 per day—or $300.00 per week."  (*Id.* at 5).  Plaintiff estimates his total damages as $6,826.47 plus an equal amount as liquidated damages and reasonable attorneys' fees and costs.  (Doc. 57 at 2).  Defendant Johnson, in response, "vigorously dispute[s] Plaintiff's calculations and claimed damages."  (*Id.* at 2).  Defendant Johnson did not file an answer in this matter.

## ANALYSIS OF THE PROPOSED SETTLEMENT

*Bona Fide Dispute*

As a threshold matter, the Undersigned finds that a bona fide dispute exists between the parties.  As the parties adequately explain in their joint motion:

> In his Complaint and Demand for Jury Trial filed on December 10, 2018
> ("Complaint") against Tire Recycling and Christopher Johnson, individually,
> Plaintiff alleged that Defendants failed to pay him minimum wages and overtime
> for hours worked over forty in a workweek.  *See* D.E. 1.  Plaintiff sued Defendants
> seeking to recover unpaid minimum wage pay and overtime wages under the Fair
> Labor Standards Act ("FLSA").

Defendant Johnson vigorously disputed Plaintiff's allegations and claimed damages. First, Defendant Johnson vehemently denies that Plaintiff was ever his employee or an employee of Tire Recycling. Defendant Johnson alleges that he is the sole employee of Tire Recycling, that Tire Recycling has no other employees, and has never had any employees other than himself. Second, Defendant Johnson alleges that even assuming *arguendo* that Plaintiff was an employee, Tire Recycling does not meet the requirements for FLSA coverage. Specifically, Defendant Johnson alleges that Tire Recycling did not gross over $500,000 during the relevant time periods.

Additionally, Defendant Johnson alleges that the extent of his association with Plaintiff was extremely limited and disputes the hours Plaintiff alleges that he worked. Specifically, Defendant Johnson claims that there was a single instance where Plaintiff assisted Defendant Johnson in picking up a work truck outside of the state of Florida to be used for tire recycling and less than a handful of times where Plaintiff approached Defendant Johnson advising him that he knew where to obtain high quality used tires and would sell them to Johnson as long as Plaintiff could use Johnson's truck to pick the tires up. Defendant Johnson claims Plaintiff was properly paid to the extent that what Plaintiff did was considered work, and not a favor. Moreover, Defendant Johnson disputes the number of hours that Plaintiff claims to have worked because Tire Recycling Services did not, and does not have customers to service each day and therefore it would be impossible for Plaintiff to have worked the hours alleged in his responses to the Court's interrogatories. Defendant Johnson also alleges that he had a good faith belief that Plaintiff was not his employee based on their limited interaction.

The Defendant denies Plaintiff's allegations and whether he is entitled to any relief whatsoever and maintains that Plaintiff was fully compensated for all hours that he worked for Defendant, and, further, that Plaintiff was properly classified as exempt.

The Defendant also contends that there is no liability for liquidated damages because its actions were in good faith and it had reasonable grounds to believe their acts, practices or omissions were not a violation of the FLSA as provided at 29 U.S.C. §541.200 and 29 U.S.C. §541.203.

(Doc. 33 at 3-4). For these reasons, it is clear that the parties have a bona fide dispute in this case. Thus, the question becomes whether the terms of the proposed settlement are fair and reasonable. The Undersigned addresses the monetary terms, the attorneys' fees, and the mutual general release separately below.

*Monetary Terms*

As indicated above, Plaintiff alleged in the Complaint that he regularly worked in excess of forty (40) hours within a work week and that Defendant deprived him of proper overtime compensation. (*See* Doc. 1 at 2). In his answers to the Court's interrogatories, Plaintiff calculated his damages as follows:

- Minimum Wage:
  - $8.25 x 66 = $544.50
  - $544.50 - $300.00 = $244.50 (owed each week)
        $244.50 x 19.4 = $4,743.30 (total minimum wage owed)
- Overtime:
  - $8.25 x .5 = $4.13
  - 26 (overtime hours worked each week) x $4.13 = $107.38 (owed each week)
        $107.38 x 19.4 = $2,083.17 (total overtime owed)

(Doc. 36 at 2). In total, Plaintiff calculated Defendants owed him $6,826.47 plus an equal amount as liquidated damages and reasonable attorneys' fees and costs. (Doc. 57 at 2). Under the proposed Settlement Agreement, however, Plaintiff will receive a total settlement in the amount of $2,000.00 comprised of $956.00 for his claimed wage damages. (Docs. 57 at 4-5, 57-1 at 2). The Settlement Agreement also indicates $1,043.00 will be allocated to Morgan and Morgan P.A., on Plaintiff's behalf "for costs associated with bringing this action, for which an IRS Form 1099 will be issued to Morgan & Morgan, P.A." (Doc. 57-1 at 2).

The Settlement Agreement does not provide, however, for liquidated damages in this case. (*See* 57-1). The parties state, "the fact that Plaintiff has compromised payment of liquidated damages is fair and reasonable under these circumstances. Defendant Johnson alleges that he acted in good faith, and the amount that Plaintiff is recovering is more than he is entitled to." (Doc. 57 at 9). The Undersigned accepts this representation and concludes that Defendant Johnson had a good-faith reason for failing to pay the disputed wages. The parties

do not attempt to address specifically the disparity between the proposed settlement amount and Plaintiff's earlier damages estimates.  However, the parties do explain that:

> To continue litigation in this matter would be extremely costly, and lacks benefit for all involved.  Based on Plaintiff's counsel's numerous conversations with Defendant Johnson, Plaintiff and his counsel has reason to believe that even if litigation were to continue, there is a risk that Defendant may file for bankruptcy, and/or that any future judgment would be beyond Defendant's ability to pay.  Therefore, the Agreement as currently executed, reduces that risk, and allows Plaintiff to recover an amount that he is satisfied with while covering the costs associated with bringing this action.  Understanding the Parties' desire to resolve this matter, and Defendant's potential inability to pay, Plaintiff's counsel has agreed to forego any claim for attorney's fees.  Illustrative of the fact that Defendant would lack the ability to pay a future judgment is that he has not retained counsel despite a Court order requiring Tire Recycling to retain counsel.  Each Party to the Agreement desires to avoid the risks, uncertainties, time, and expense associated with litigating this matter.

(Doc. 57 at 4).

The Undersigned finds the parties' justification for the proposed settlement, including the monetary terms, to be persuasive, fair, and reasonable.  Thus, the Undersigned finds the proposed monetary terms of settlement are a fair and reasonable resolution of the bona fide dispute in this case.

*Attorney's Fees*

The proposed settlement includes an agreement that Plaintiff's counsel has agreed to forego any attorney's fees in order to facilitate a settlement in this case.  (Doc. 57 at 5). However, the Settlement Agreement explains that $1,043.00 will be paid to Morgan & Morgan P.A. "for costs associated with this case, for which and IRS 1099 will be issued to Morgan & Morgan P.A." (Doc. 57-1 at 2).  Further, the Agreement states that within ten days of the Court entering a final judgment and dismissal of the lawsuit, the payment will be sent directly to his

attorney, Chanelle Ventura.  (*Id.*).  The Settlement Agreement does not provide details as to
what exactly the reimbursed costs are or why an IRS 1099 is appropriate in this case.

As explained in *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228
(M.D. Fla. 2009), "the best way to insure that no conflict [of interest between an attorney's
economic interests and those of his client] has tainted the settlement is for the parties to reach
agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.
If these matters are addressed independently and seriatim, there is no reason to assume that the
lawyer's fee has influenced the reasonableness of the plaintiff's settlement."  In *Bonetti*, the
Court concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1)
> constitutes a compromise of the plaintiff's claims; (2) makes full
> and adequate disclosure of the terms of settlement, including the
> factors and reasons considered in reaching same and justifying the
> compromise of the plaintiff's claims; and (3) represents that the
> plaintiff's attorneys' fee was agreed upon separately and without
> regard to the amount paid to the plaintiff, then, unless the settlement
> does not appear reasonable on its face or there is reason to believe
> that the plaintiff's recovery was adversely affected by the amount
> of fees paid to his attorney, the Court will approve the settlement
> without separately considering the reasonableness of the fee to be
> paid to plaintiff's counsel.

715 F. Supp. 2d at 1228.

In the instant case, the parties state unequivocally that Plaintiff's attorney is forgoing her
fees in this matter.  (Doc. 57 at 5).  Even so, the Court notes that it appears the parties'
agreement constitutes a compromise of Plaintiff's claims given the procedural history of this
case and the fact that Defendant's financial situation poses a substantial risk that "even if
Plaintiff were to obtain a judgment in his favor, he may might not be able to recover his
damages even after protracted litigation."  (*Id*. at 7).

*Mutual General Release*

The Settlement Agreement includes a mutual general release where the parties agree to

the following:

a.      This Agreement shall constitute a waiver and release of any and all claims
Poole has, might have, or believes he has, as of the date of this Agreement, against
Johnson, whether such claims arise or could arise under federal, state,
administrative, or local law (including but not limited to, actions for compensatory
damages, pain, suffering, and emotional distress).

b.      Johnson knowingly and voluntarily releases and forever discharges Poole
of and from any and all claims, known and unknown, which Johnson has or may
have as of the date of execution of this Agreement. Johnson's release of Poole is
intended to be, and is, broad as the release of Johnson in paragraph 4(c) below.

c.      Poole knowingly and voluntarily releases and forever discharges Johnson,
his predecessors, successors, independent contractors, subsidiaries, insurers,
affiliates, and directors, officers, shareholders, members, employees-including, but
not limited to, agents, insurers and attorneys of and from any and all claims, known
and unknown, which Poole has or may have as of the date of execution of this
Agreement, including, but not limited to, any alleged violation of: Labor
Management Relations Act of 1947; The Employee Retirement Income Security
Act of 1973;  The Consolidated Omnibus Budget Reconciliation Act of 1985; The
Civil Rights Act of 1866;  The Civil Rights Act of 1964;  The Civil Rights Act of
1991; Age Discrimination in Employment Act of 1967; Sections 1981 through
1988 of Title 42 of the United States Code; The Americans with Disabilities Act of
1990; The Fair Labor Standards Act; The Occupational Safety and Health Act; The
Family and Medical Leave Act of 1993; The Florida Civil Rights Act of 1992; The
Florida Equal Pay Act, § 725.07, *Florida Statutes;* Equal Pay Act of 1963; The
Florida Whistleblower Act, § 448.102, *et seq., Florida Statutes;* Florida's Wage
Rate Provision, § 448.07, *Florida Statutes;* Florida's Minimum Wage Act, §
448.110, *Florida Statutes;*  Florida's Attorneys' Fees Provision for Successful
Litigants in Suits for Unpaid Wages,§ 448.08, *Florida Statutes;* The Rehabilitation
Act of 1973; The Health Maintenance Organization Act of 1973;  The Immigration
Reform and Control Act of 1986;  Executive Order 11141; Executive Order 11246;
Executive Order 11375; Any other federal, state or local civil or human rights law
or any other local, state or federal law, regulation or ordinance;  Any public policy,
contract, tort, common law; or Any allegation for costs, fees, or other expenses
including attorneys' fees incurred in these matters each as amended, and any other
federal, state or local civil or human rights law, or any other local, state or federal
law, rule, regulation or ordinance, and/or public policy, contract, or tort or common
law claim, including, but not limited to, any claims for defamation, negligent
misrepresentation and/or breach of contract, having any bearing whatsoever or
based on any matter or conduct, including without limitation any matter involving

the terms and conditions (including compensation and benefits) of Poole's alleged employment with Johnson and this action, which he has or may have as of the date of this Agreement. However, the Parties acknowledge and agree that this release does not cover, and specifically excludes, claims under the Florida Workers' Compensation Act.

(Doc. 57-1 at 2-4).

The parties stipulate that the mutual general release does not "render the Agreement unreasonable." (Doc. 57 at 10). The parties state, "[t]o the contrary, courts within this district consider mutual general releases as adequate consideration for a broad general release by plaintiffs in FLSA cases [and] because the release is mutual and the claims that Plaintiff is releasing are equally as broad as the claims that Defendant Johnson is releasing, the Agreement is fair and reasonable." (*Id.*).

The *Lynn's Food Stores* analysis also necessitates a review of the proposed consideration as to each term and condition of the settlement, including foregone or released claims. *Shearer v. Estep Const., Inc.*, No. 6:14-CV-1658-ORL-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015). The valuation of unknown claims is a "fundamental impediment" to a fairness determination. *Id.*; *see also Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350-52 (M.D. Fla. 2010). The Court typically "cannot determine, within any reasonable degree of certainty, the expected value of such claims." *Id.* Thus, the task of determining adequate consideration for forgone claims is "difficult if not impossible." *Id.* (citation omitted).

Additionally, this Court has found that general releases in FLSA cases are often unfair to plaintiffs. *See Moreno*, 729 F. Supp. 2d at 1351. Specifically, "[a]lthough inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." *Id.* The Court has found

that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer." *Id.* at 1352.

Notwithstanding this line of cases, however, other jurists have approved non-cash concessions in FLSA settlement agreements where they have been negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Buntin v. Square Foot Mgmt. Co., LLC*, No. 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *3 (M.D. Fla. May 27, 2015).

In the instant case, the parties did not negotiate separate consideration for the mutual general release. The Undersigned finds that here the mutual general release does not undermine the reasonableness or fairness of the Settlement Agreement. As stated by the parties:

> Plaintiff's negotiated settlement terms are satisfactory . . . Plaintiff's counsel, who is experienced in wage and hour matters, views the agreed-upon terms as a good outcome for the Parties given the procedural history in this case and bona fide disputes that exist. It could be years before this matter is ready for a trial, and this Court ultimately could determine that Plaintiff is not entitled to any recovery.

(Doc. 57 at 7). The Undersigned also places great weight on the fact that the Defendants appear to be insolvent or nearly insolvent and that Plaintiff may never recover any money on his FLSA claim unless Defendants are incentivized to resolve the case on a negotiated basis in lieu of allowing a default judgment to be entered and forcing Plaintiff to pursue post-judgment recovery proceedings. In short, the proposed settlement containing mutual general releases buys Plaintiff certainty and finality with respect to this litigation, which would otherwise likely be unattainable without such a concession on both sides of the litigation. Thus, the Undersigned finds the proposed settlement here is a fair and reasonable resolution of the FLSA claim.

**CONCLUSION**

Upon consideration of all the foregoing, the Undersigned finds and recommends that the proposed settlement in this case is fair and reasonable, and that the proposed settlement should be approved by the Court.  Accordingly, the Undersigned respectfully **RECOMMENDS** that:

1.     The Joint Motion for Approval of Settlement and Dismissal of the Case with Prejudice (Doc. 57) be **GRANTED**.

2.     The Settlement Agreement (Doc. 57-1) be approved by the Court as a fair and reasonable resolution of a bona fide dispute regarding Plaintiff's FLSA claim

3.     The Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

Respectfully recommended in Chambers in Ft. Myers, Florida on February 24, 2020.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties